***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. This case is subject to the North Carolina Workers' Compensation Act;
2. An employment relationship existed between plaintiff and defendant-employer, Demp's Saw Tool, and Royal SunAlliance was the insurer on the risk on the date of injury of 24 February 2000;
3. An employment relationship existed between plaintiff and defendant-employer, Lietz Tooling Systems, and Royal SunAlliance was the insurer on the risk on the date of injury of 11 July 2000;
4. The parties stipulate to an average weekly wage of $320.00 with a compensation rate of $213.34;
 ***********
Based upon the competent and credible evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 59 years old and had been employed by Demp's Saw and Tool and Lietz Tooling Systems for a combined total of approximately 13 or 14 years. For the majority of his employment, plaintiff worked as a delivery man and maintenance worker. On 24 February 2000, in the course of his employment with defendant-employer Demp's Saw and Tool, plaintiff lifted a trash can and felt sudden and severe pain in his lower back.
2. On 25 February 2000, plaintiff called his supervisor at work and informed him of the injury, then he presented to Dr. William O. Ameen, Jr., of Jamestown Family Practice. Dr. Ameen diagnosed plaintiff with a lumbosacral strain. On 28 February 2000, Dr. Ameen wrote plaintiff out of work for 72 hours or until 2 March 2000. On 2 March 2000, plaintiff was re-examined and released to return to work on 6 March 2000, with light duty restrictions of no lifting over 10 pounds, no repetitive bending, and no prolonged standing of more than 30 minutes. Plaintiff returned to work on that date at light duty.
3. Pursuant to a Form 19, Employer's Report of Employee's Injury to the Industrial Commission, dated 2 March 2000 plaintiff's claim was referred to by defendants as a "medicals only" case.
4. Prior to his injury on 24 February 2000, plaintiff had experienced back pain in the past for which he had received conservative medical treatment, but had never undergone back surgery.
5. In 1998, plaintiff injured his right shoulder in a work-related accident for which he underwent surgery. Following the surgery, plaintiff returned to work with a 15 pound lifting restriction for his right arm.
6. Plaintiff continued to treat with Dr. Ameen, and on 27 March 2000, plaintiff was released to return to full duty work without impairment as of 28 March 2000. At that time, plaintiff returned to his former job as a delivery man and maintenance worker.
7. Dr. Ameen opined that plaintiff's back injury of 24 February 2000, may have aggravated his preexisting back problems.
8. In May 2000, Demp's Saw Tool was sold to Lietz Tooling Systems; however, Royal SunAlliance remained the insurance carrier.
9. On 11 July 2000, plaintiff was directed to deliver a van full of tools to Collinsville, Virginia, and to pick up another load of tools there for the return trip. Plaintiff was assured that there would be assistance in loading and unloading the van. When plaintiff arrived at the delivery location, the building was closed and he had to unload and reload the van himself. While unloading the van, plaintiff began to experience pain in his back. He was able to complete the loading and unloading by breaking down the boxes of tools and moving them pieces at a time. As plaintiff was returning from Collinsville, he noted that his back pain was increasing and radiating down his right leg. Plaintiff was required to stop approximately five times during the return trip to "get out of the van and just walk around." Plaintiff did not report the injury upon his return because it was approximately 3:00 a.m. on 12 July 2000 when he arrived at the shop.
10. Plaintiff presented to Jamestown Family Practice on 13 July 2000, complaining of pain in his back and shoulder. He was told that treatment had to be approved by defendant-employer, so plaintiff called and reported the injury at that time. Vice-President Terry Hunt approved the treatment. Plaintiff was diagnosed with back spasms and treated with medication. He was taken out of work through 17 July 2000. Plaintiff was re-examined on 18 July 2000, and Dr. Ameen recommended that plaintiff remain out of work until 24 July 2000.
11. Plaintiff was referred to Bray Maness for physical therapy and had an initial evaluation on 21 July 2000, following which he was diagnosed with back spasms. Bray Maness contacted the carrier for authorization for treatment but was unable to obtain authorization from defendant-carrier.
12. On 24 July 2000, plaintiff was released with light duty restrictions of no lifting over 10 pounds and no bending or stooping. He returned to work but had an increase in back pain. He saw Dr. Miles at Jamestown Family Practice on 28 July 2000 and was written back out of work effective 25 July 2000 through "the entire week on Mon. 7/31/00," or until 4 August 2000.
13. On 5 August 2000, plaintiff returned to Dr. Ameen. Although he was still experiencing tenderness in the lumbar muscles, plaintiff reported that his back felt much better. Dr. Ameen recommended that plaintiff be referred to Dr. Scott Spillman, an occupational medicine physician, for an assessment of long term disability for his back. Dr. Ameen released plaintiff with light duty restrictions of no lifting over 15 pounds, effective through 14 August 2000. Plaintiff returned to work.
14. Defendant-carrier refused to authorize any treatment with Dr. Spillman, and they discontinued their approval of treatments by Dr. Ameen. Plaintiff continued to treat with Dr. Ameen on his own, and on 19 August 2000, Dr. Ameen recommended he remain on light duty with a 20 pound limitation effective through 1 September 2000.
15. Plaintiff continued to perform his old job, which was adjusted to conform with his lifting restrictions. His back continued to bother him, and Dr. Ameen recommended that plaintiff seek chiropractic treatment. Dr. Ameen also suggested that plaintiff undergo an MRI, but plaintiff was unable to afford the examination.
16. On 17 February 2001, plaintiff underwent surgery for his gall bladder and remained out of work for approximately six weeks. When plaintiff returned to work in March, his employer advised plaintiff that his previous position was no longer available to him. Plaintiff was offered and he accepted a job operating a grinding machine for defendant-employer.
17. The machine operator position required constant standing, frequent material handling, lifting up to 20 pounds or more, pushing and pulling motions, and twisting or turning the body to move parts from the table behind or beside the operator to the front or other side of him.
18. The constant standing and the other motions required in the job increased plaintiff's back pain such that he could not continue in the job. In addition, the job aggravated plaintiff's previous right shoulder injury. Plaintiff attempted to perform the grinder job for approximately two weeks. At that time, he was moved to a different grinding machine which plaintiff described as being "more physical" and harder for him to perform. The new job required continuous pulling and pushing, which aggravated plaintiff's back condition further.
19. Plaintiff had an MRI on 21 April 2001 which was interpreted to show an annular tear on the right at L4-5 with a broad based protrusion into the right L4-5 neural foramen and lateral to it, as well as a small protrusion at L5-S1 on the left.
20. Dr. Ameen's physician's assistant wrote plaintiff a note excusing him from work effective 23 April 2001, and continuing until he could be "seen by [a] specialist on 5/8/01." Dr. Ameen or someone from his office referred plaintiff to neurosurgeon Dr. Victor T. Freund at Johnson Neurological Center.
21. Dr. Freund saw plaintiff on 8 May 2001, and diagnosed him with a low back lumbosacral strain with a possible annular tear. He recommended that plaintiff undergo physical therapy and a Medrol dosepack, followed by resuming Relafen. Dr. Freund took plaintiff out of work indefinitely, and scheduled him for a follow-up exam in one month.
22. Plaintiff received physical therapy at Bray Maness which improved his condition to the point where his severe pain had lessened. Plaintiff had a follow-up appointment with Dr. Freund on 13 June 2001, at which time Dr. Freund discussed with him his ability to return to work. Plaintiff expressed the desire to continue out of work to see if his back would continue to improve, and Dr. Freund wrote him out of work for an additional month until his next follow up appointment. Given that plaintiff's back injuries were continually aggravated by his job, his request for additional time in which to heal was reasonable and does not constitute a refusal to return to suitable employment.
23. Dr. Freund examined plaintiff again on 18 July 2001. He recommended plaintiff consult with Dr. Brian A. Blue at Triad Orthopaedics for possible nucleoplasty surgery. The intradiscal electrothermal treatment (IDET) or nucleoplasty, is a procedure that is recognized by the medical community as an effective treatment for annular tears and bulging disks. Dr. Freund wrote him out of work until 18 September 2001, and scheduled a follow up visit.
24. At defendants' request, on 5 September 2001, plaintiff presented to Dr. Albert Bartko for an independent medical examination. Dr. Bartko noted that plaintiff's back pain persisted, and he attributed it to the annular tear and resulting neural encroachment of L-5 as depicted on plaintiff's MRI. Dr. Bartko did not feel that plaintiff was at maximum medical improvement and had several suggestions for additional testing and treatment for plaintiff. Dr. Bartko agreed that plaintiff could not return to work at his former job and that his work abilities were limited to the sedentary to light range.
25. Dr. Freund saw plaintiff in follow-up on 18 September 2001. He again recommended that plaintiff undergo the nucleoplasty with Dr. Blue. Dr. Freund further recommended that plaintiff remain out of work from the machine operator position or the delivery/maintenance position pending the evaluation for the IDET procedure. He arranged for plaintiff to have an evaluation with Dr. Blue.
26. Dr. Blue examined plaintiff on 3 October 2001, and recommended that plaintiff return to the clinic for a follow-up in one week. On 10 October 2001, Dr. Blue's assistant discussed the IDET procedure with plaintiff's wife. Dr. Blue recommended plaintiff remain out of work from 3 October 2001 to 30 October 2001, and scheduled the nucleoplasty for 19 October 2001.
27. A pre-operative evaluation was done by Thomasville Medical Center on 16 October 2001, at which time it was determined that there was a problem with plaintiff's health insurance coverage. Thereafter, the surgery was postponed, and Dr. Blue released plaintiff from his care effective 31 October 2001.
28. Dr. Freund testified that the pain plaintiff experienced following the occurrences on 24 February 2000 and 11 July 2000 was consistent with the resulting injury of an annular tear. Dr. Freund also opined that the chance that plaintiff would return to his pre-injury condition was very small, and it is likely that he will continue to experience pain for the remainder of his life. He further opined that it is reasonable for plaintiff to remain out of work at this time, but would recommend an FCE in order to document the limits of plaintiff's abilities.
29. The competent medical evidence of record establishes that plaintiff's disabling back condition was caused or aggravated by plaintiff's accidents or specific traumatic incidents at work on 24 February 2000 and 11 July 2000, or a combination of the two. Further, the Full Commission finds that the medical treatment plaintiff has received thus far and the additional medical treatment recommended by plaintiff's physicians is reasonably required to effect a cure or give relief.
30. As a result of plaintiff's work-related injuries or aggravations of a pre-existing, non-disabling back condition, plaintiff was disabled from work from 13 July 2000 to 23 July 2000, 25 July 2000 through 4 August 2000, and from 23 April 2001 and continuing until plaintiff returns to work at suitable employment or until further Order of the Commission.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff experienced an injury by accident or specific traumatic incidents arising out of and in the course and scope of his employment on both 24 February 2000 and 11 July 2000. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to temporary total disability benefits in the amount of $213.24 per week dating from 13 July 2000 to 23 July 2000, 25 July 2000 through 4 August 2000, and from 23 April 2001 to the present and continuing. N.C. Gen. Stat. § 97-29.
3. Plaintiff is not at maximum medical improvement. Treatment options have been offered by the physicians plaintiff has seen which are reasonably necessary to provide relief or lessen his disability. Plaintiff is entitled to receive the medical treatment recommended by these doctors. The treatment provided by doctors chosen by plaintiff which was reasonably necessary to effect a cure, give relief and/or lessen plaintiff's period of disability is hereby approved. N.C. Gen. Stat. § 97-25.
4. Defendants are entitled to a credit in the amount of 75% of any disability benefits paid to plaintiff by a wholly funded employer plan. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay temporary total disability compensation to plaintiff at the rate of $213.34 per week from 13 July 2000 to 23 July 2000 and from 25 July 2000 to 5 August 2000, and from 23 April 2001 to the present and continuing until plaintiff returns to work or until further order of the Commission. Defendants shall receive credit for a total of 75% of any disability benefits paid to plaintiff by a wholly funded employer plan. The remaining 25% of defendants' credit shall be paid to plaintiff's attorney as part of the attorney's fee approved below. As much of said compensation as has accrued shall be paid in a lump sum.
2. Defendants shall pay for medical expenses incurred or to be incurred in the future which are reasonably required to provide relief, effect a cure, or lessen plaintiff's disability when bills for the same are submitted and approved according to procedures adopted by the Commission, including the treatment related to his back injury provided by those physicians and chiropractors chosen by plaintiff.
3. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff prior to the deduction of defendants' credit in Paragraph 1 above is hereby approved and shall be deducted from sums due plaintiff and paid directly to plaintiff's counsel. Of the lump sum due plaintiff prior to the subtraction of the credit allowed to defendants, defendants shall deduct 25% and pay that amount directly to plaintiff's counsel. Of the continuing amount, defendants shall send every fourth compensation check to plaintiff's attorney.
4. Defendants shall pay the costs, including an expert witness fee of $300.00 to Dr. William Ameen.
This the ___ day of September, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN